HIRSCHFIELD v. FRANKS.

1. TRIAL—TERMS OF LEASE—EVIDENCE—QUESTION FOR JURY.
   A party cannot complain of the action of the court in allowing the jury to determine the terms of a written lease from oral evidence, where he permitted such evidence to be introduced without objection, but caused the instrument to be excluded.

2. LANDLORD AND TENANT—LEASE OF STAIRWAY—RECOVERY OF RENT.
   One who lets the upper rooms of his store building under a lease which gives to the tenant full control of an adjacent stairway cannot recover rent of the adjoining proprietor for the use of the stairway during the continuance of the lease.

Error to Wayne; Donovan, J. Submitted February 4, 1897. Decided April 27, 1897.

*Assumpsit* by Charles B. Hirschfield and another against Frederick B. Franks for rent. From a judgment for defendant, plaintiffs bring error. Affirmed.

*Adam E. Bloom*, for appellants.

*George Cox*, for appellee.

MONTGOMERY, J. This action originated in justice's court. The claim is for use and occupation and lease of stairway of premises No. 18 Monroe avenue, Detroit, for the month of June, 1895. The jury found for defendant, and the plaintiffs bring error.

It appears that plaintiffs were lessees of that portion of the block known as "No. 18 Monroe Avenue," and defendant was in occupancy of No. 16, and sublet a portion of the three upper stories. There was no access by stairway to these three upper stories, except by using the stairway of No. 18. Plaintiffs claim that in March, 1895, defendant desired to obtain the right to use the

stairway of No. 18 for himself and tenants, and that, after some talk, it was agreed that he might use the stairway on paying $20 per month for one year; that defendant paid rental for the months of April and May, and refused to pay for the month of June. Defendant testified that there was no agreement between the parties about the use of the stairway, but that he paid for the use during the months of April and May, and that, when the receipt for the April payment was brought in, one of the plaintiffs brought a written agreement for a year, which he (defendant) refused to sign, and that plaintiff then said, "The only way you can have it is to pay your rent, and, if you do not pay the rent, I will lock the door,—$20 per month." The defendant states that he gave the plaintiffs a check, and that he also paid in May.

It appears that, before the 1st of June, one McNair had obtained from plaintiffs the three upper stories of No. 18, but whether this included an exclusive lease of the stairway is not altogether clear on the proofs. It also appears that defendant thereupon went through the form of leasing No. 16, above the first story, to McNair, and of re-leasing portions of it from him. This would manifestly give him no greater rights than he could have acquired by attorning directly to McNair, and this he might doubtless have done if plaintiffs' rights in the stairway had been transferred to McNair. As before stated, the rights which McNair had in the stairway, under his lease, do not appear as clearly as might be desired. But for this condition of the record the plaintiffs are mainly responsible. The defendant offered a written lease made by plaintiffs to McNair, and this was excluded on plaintiffs' objection, and does not appear in the record. One of the plaintiffs testified, however, as follows:

"Our lease to McNair was for three years, and Franks then went to McNair and rented from him; so he claimed.

"*Q.* This lease is still in force to Mr. McNair?

"*A.* So far as I know, it is.

112 MICH.—29.

"*Q.* You have received $30 a month for this part, haven't you?

"*A.* Yes, sir; we have.

"*Q.* Well, McNair gave a lease, too?

"*A.* Yes, sir.

"*Q.* He had possession, and was paying you $30 a month?

"*A.* It was under his control.

"*Q.* Didn't you tell Mr. McNair that you wanted to have control of that stairway?

"*A.* Yes, sir.

"*Q.* And did he not tell you that he would not take the rooms if you were to retain control of the stairway?

"*A.* He did.

"*Q.* This lease was for three years?

"*A.* Yes, sir."

The circuit judge charged the jury as follows:

"Now, according to the testimony on the plaintiffs' side (the plaintiffs and their witnesses), they made a contract for a year to lease the stairway,—a 'verbal contract,' as they call it; that is, an oral, a spoken, contract, which would be legal if they had made it,—at $20 a month, or $240 a year, payable monthly, in advance. If they made that contract, and if they made it for a year, they could not break it midway in the year, or at any time in the year. It would take the same two parties to unmake it as to make it; that is, if they made it. It would be just as binding if they made it for a year as though they put it in writing for one year; but whether they made it or not is for you, and not for the court. You have seen the witnesses, you have heard what they swore to, you have been paying attention all the way through, and that is the part you are to decide. You are the judges of that. It is not necessary to even recall the names of the witnesses. The defendant claims (Mr. Franks) that the plaintiffs have even since that time leased to a Mr. McNair,—to have leased, not only the adjoining side, but leased the stairway and everything,—and they have no connection. The plaintiffs say, 'We did not lease without reserve;' they leased their right, but did not release Franks by it, still claiming that they held the same right on Franks; and, unless they interfered with Franks, unless they interfered with him by a lease to somebody else, unless they interfered in some way, it would not hinder their

recovery. But if they took it entirely away,—if, after having leased to Franks the stairway, and given him the right to go up, they took it away, and gave it to somebody else,—that would break the lease, and release the tenant from paying the rent. I state that repeatedly. That is, you could not have two tenants, and derive the revenue for the same thing, without the consent of the other, and in any way interfere. If you, in other words, rent a barn from a man, and during the year he used the other side without your consent,—leased the other side,— he could not draw rent of the party without your consent."

Complaint is made of these instructions, and two grounds are urged: *First*, that the instruction leaves out of consideration the fact of a letting from month to month; and, *second*, that the court, after excluding the written lease of No. 18 to McNair, left it to the jury to determine the terms of the lease without the aid of such testimony.

It may be said, as to the alleged letting from month to month, that there was no proof showing such a letting. Plaintiffs' testimony, if believed, showed a letting for a year. Defendant's showed an agreement more in the nature of a license, terminable without notice, on failure to pay rent.

As to the error claimed in submitting the terms of the letting to McNair to the jury, the plaintiffs do not occupy a position entitling them to complain. The oral testimony was not objected to by their counsel, while the written lease was. We are not prepared to say that the jury were not justified in drawing an inference that the complete control of this stairway was given to McNair by the lease. If it was, the defendant was no longer bound to pay plaintiffs for its use.

We think no error of which the plaintiffs are entitled to complain was committed. Judgment will be affirmed.

The other Justices concurred.