## CLARK *v.* BECKENSTEIN.

1. DEFAULT—SETTING ASIDE—CONDITION IMPOSED—MODIFICATION.
   The requirement that appellant file a bond for the payment of any amount found due to his codefendant as a condition for setting aside his default, where it appears that he refrained from making a defense because he believed it

was understood with plaintiffs that no decree would be taken against him, *held*, too onerous if he is entitled to have his default set aside, and the condition will be modified, on appeal, to filing a bond for the payment of any costs which may finally be adjudged against him.

2. APPEAL AND ERROR—SETTING ASIDE DEFAULT—REVIEW WHOLE CONTROVERSY.

Where appellant's default has been set aside, in view of the fact that he is to make a defense, the Supreme Court will not review the case until the whole controversy is before it.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted January 21, 1920. (Docket No. 26.) Decided June 7, 1920.

Bill by D. Adelbert Clark and another against Joseph B. Beckenstein and Walter H. Clark to enjoin summary proceedings before a commissioner, and for an accounting. From the decree rendered, plaintiff and defendant Clark appeal. Reversed, and remanded.

*Frank A. Stivers* (*John R. Rood,* of counsel), for plaintiffs.

*Baubie & Baubie,* for defendant Clark.

*William Henry Gallagher,* for defendant Beckenstein.

BIRD, J. In March, 1918, plaintiffs were the owners in fee of what is known as the Avery Park subdivision to the village of Wayne. On March 28, 1918, they made a contract with defendant Clark to construct a sewer and water system therein for a consideration of $8,800; which was evidenced by four promissory notes, the first one of which was for $2,800, payable on September 1, 1918. To further secure the payment of said consideration they conveyed, by warranty deed, 90 lots in said subdivision, for an expressed con-

sideration of one dollar, and took back from Clark a land contract in which he agreed to reconvey to plaintiffs the lots upon payment of the notes and interest. The deed was afterward recorded but the contract was not. At that time, or soon thereafter, an additional agreement was executed in which defendant Clark agreed to reconvey said lots if he failed to complete his contract, upon being paid for the work done, and to release lots sold by plaintiffs on the basis of $125 each. It was also agreed therein to permit plaintiffs to mortgage said lots in a sum not to exceed $11,000, for the purpose of raising funds to finance the subdivision work. Soon after the execution of these agreements defendant Clark began the work under his contract and did considerable work thereon, but did not complete it.

In August, 1918, defendant Beckenstein held a mortgage against other property which Clark owned, and for the purpose of releasing it defendant Clark conveyed to Beckenstein, by warranty deed, without the knowledge or consent of plaintiffs, the 90 lots, and in addition made a cash payment of $6,375.12. About a week thereafter Beckenstein notified plaintiffs that he had purchased the lots from Clark. Subsequently, and after the payment of the first note was in default, he served notice of forfeiture on plaintiffs and attempted to get possession of the lots by proceedings before a circuit court commissioner. At this juncture of affairs plaintiffs filed this bill setting out the history of the transactions and prayed for an injunction to restrain the proceedings before the commissioner, for an accounting and determination of how much, if anything, was owing to defendant Clark on the sewer contract, and for permission to redeem if anything was found due, and for a reconveyance of the lots. Both Clark and Beckenstein were made defendants. Clark made no appearance. Beckenstein appeared and an-

swered, claiming to be a purchaser in good faith of the lots. The issue was joined between plaintiffs and Beckenstein and the matter went to a hearing. The chancellor found that Beckenstein was a *bona fide* purchaser of the lots and ordered a reconveyance thereof to plaintiffs upon condition that they pay Beckenstein what was actually due him, which was the sum of $6,000 and interest since February 28, 1918. In addition to this relief the chancellor gave the plaintiffs relief against Clark for whatever sum they might pay Beckenstein. Beckenstein was given costs against plaintiffs and plaintiffs were given costs against Clark.

After defendant Clark discovered that relief had been granted against him he petitioned the court to open his default and give him an opportunity to defend, at the same time tendering an answer accompanied with affidavits, for the purpose of excusing his default. His claim is, in substance, that he refrained from making a defense, on the promise of plaintiffs that they would ask for no relief against him. After several hearings and much controversy the chancellor made an order setting aside Clark's default on the condition that he pay, or file a bond to pay, the amount adjudged to be due Beckenstein. The plaintiffs have appealed from the decree and Clark has appealed from the order setting aside the default.

It is not our purpose to enter into a discussion of the questions of veracity between counsel, nor of their respective claims, further than to say that we are convinced from the entire record that Clark refrained from making a defense, believing it was understood between himself and plaintiffs, and their respective counsel, that no decree would be taken against him. We are impressed that if defendant Clark was entitled to have his default set aside, the condition imposed by the court was too onerous. See *City of Detroit* v. *Wayne Circuit Judge*, 112 Mich. 317; *Beecher* v. *Wayne*

*Circuit Judges,* 70 Mich. 363. We are also impressed that if defendant Clark is to be permitted to make a defense we ought not to review plaintiff's appeal until the whole controversy is before us. In view of these impressions we have concluded to set aside that part of the order imposing the condition of opening the default on condition that he file with the trial court a bond conditioned to pay any costs which may be finally adjudged against him in the litigation, and to order the record remanded to the trial court for such additional testimony as the parties may desire to offer, subject to the rules and practice of the court. The question of costs of this proceeding will be reserved until the final hearing.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.